UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | Case No. 3:16-cr-00035-SLG-SAO |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 3:16-cr-00058-SLG-SAO |
| vs. | ) ) ) | **REPORT AND RECOMMENDATION REGARDING DEFENSE MOTION TO SUPPRESS EVIDENCE SEIZED FROM** |
| ARNOLD WESLEY FLOWERS, II, | ) ) | **BEST STORAGE LOCKER 4045** |
| Defendant. | ) ) ) ) | **Dkt. 54 in 3:16-cr-00035-SLG-SAO** (**Dkt. 60 in 3:16-cr-00058-SLG-SAO**)[1] |

## Introduction

Defendant, Arnold Wesley Flowers II (Defendant), is named in two pending cases before the court, Miranda May Flowers (Miranda Flowers), is named in one. In 3:16-cr-00035-SLG-SAO, Defendant was indicted on one count of Possession of a Controlled Substance with Intent to Distribute violating 21 U.S.C. § 841(a)(1) and (b)(1)(C), one count of Possession of a Firearm in Furtherance of Drug Trafficking violating 18 U.S.C. § 924(c)(1)(A)(i), and one count of Felon in Possession of Firearms violating 18 U.S.C. 922(g)(1) and 924(a)(2).[2] In 3:16-cr-00058-SLG-SAO, a First Superseding Indictment named Defendant and Miranda Flowers in fourteen counts of Wire Fraud in violation of 18 U.S.C. 1343.[3]

Defendant moved to suppress all evidence seized pursuant to search warrant #3AN-11-888 authorized by the Alaska court to search a storage locker (locker #4045) at Best Storage, 3521 E. Tudor Road, Anchorage, Alaska; Miranda Flowers joined the motion.[4] The Government opposed

---

[1] Docket annotations in 3:16-cr-00058-SLG-SAO appear in parentheses.
[2] Dkt. 2.
[3] Dkt. 132.
[4] Motion at Dkt. 54., Memorandum at Dkt. 55 (Motion at Dkt. 60, Memorandum at Dkt. 61). Miranda May Flowers joined at Dkt. 67.

1

at Dkt. 69 (Dkt. 80) and Defendant replied at Dkt. 86 (Dkt. 99). The court considered Defendant's Supplemental Memorandum and Government's Opposition to the Supplemental Memorandum.[5] Defendant requested an evidentiary hearing, Government opposed, and the court did not find an evidentiary hearing necessary to decide the motion.[6] The court considered proffered facts from the parties, exhibits offered in support of the pleadings, and arguments offered on August 23, 2016.[7]

## Issues Presented

An Alaska magistrate judge authorized the search of storage locker #4045 at Best Storage in Anchorage, Alaska in search warrant #3AN-11-888, issued and executed on March 29, 2016.[8] Defendant and Miranda Flowers were charged in part based on evidence obtained from this search. Defendant and Miranda Flowers challenge the lawfulness of this warrant and the officers' reliance upon it.[9] This Report and Recommendation addresses the following issues:

I. Whether Defendant has standing to challenge search warrant #3AN-11-888.

II. Whether Miranda Flowers has standing to challenge search warrant #3AN-11-888.

III. Whether Defendant and Miranda Flowers were entitled to a <u>Franks</u> hearing to challenge Alaska state search warrant #3AN-11-888 based on material omitted from the supporting affidavit.

---

[5] Supplemental Memorandum Dkt. 95 (Dkt. 112), Government Opposition Dkt. 99 (Dkt. 115)
[6] Dkt. 111 (Dkt. 129), Order regarding <u>Franks</u> hearing. Dkt. 140, minutes of August 23, 2016 hearing.
[7] Dkt. 134, at 90. See also August 3, 2016 status hearing. Dkt. 94 (Dkt. 111), Dkt. 96 (Dkt. 119).
[8] Officers of the Anchorage Police Department led the search accompanied by other law enforcement agencies.
[9] Dkt. 54 (Dkt. 60).

IV. Whether the evidence presented to the Alaska magistrate judge was insufficient for the magistrate to find a substantial basis that probable cause existed to search Best Storage locker #4045. [10]

**Findings of Fact**

In January 2016, the Anchorage Police Department began investigating Davon Smith (Smith) and Ryan Blackburn for the sale and distribution of controlled substances. Detective Adair purchased controlled substances (heroin) from Blackburn who obtained them from Smith. Smith resided with the Defendant, Miranda Flowers, and Arnold Wesley Flowers III (Defendant's son), from January 2016 through March 29, 2016.

Pursuant to this investigation, Detective Robert Blanton from Anchorage Police Department submitted an affidavit seeking a search warrant for Storage locker #4045 at Best Storage in Anchorage, Alaska on March 29, 2016.[11] The Affidavit described his training and expertise obtained over his fourteen years in law enforcement. He investigated cases involving controlled substances and weapons offenses, and investigated criminal activities including cocaine sales, drug laboratories, and stolen property. His last two years focused on investigating illegal drugs and illegal weapons trafficking, specifically involving illegal controlled substances such as marijuana, cocaine, methamphetamine, heroin, and other illegal narcotics. The affidavit detailed some characteristics common to those involved in the sale of controlled substances regarding their operating procedures based on his experiences.

---

[10] The United States argues that, had this court found the warrant invalid, suppression would be improper under the doctrine of 'Good Faith.' As this court found the warrant valid, the issue of whether the 'Good Faith Exception' applies is no longer at issue.
[11] The search warrant and supporting affidavit are Exhibit A to Defense's Motion Suppress at Dkt. 54 (Dkt. 60).

With respect to the investigation of Smith and Blackburn, the affidavit relayed that on January 27, 2016 Detective Adair from the Anchorage Police Department obtained heroin indirectly from Smith. Smith resided at 5422 Larkspur in Anchorage, Alaska. Surveillance revealed that Defendant, Miranda Flowers, and Arnold Wesley Flowers III (Defendant's son) resided with Smith. The affidavit described that Detective Blanton believed, based on his interaction with other agencies, Defendant was possibly engaged in selling illegal drugs in Anchorage.

The affidavit described that on February 24, 2016 Smith again provided controlled substances to Detective Adair. Smith drove back and forth from 5422 Larkspur to Best Storage, 3521 East Tudor Road in Anchorage, Alaska to meet with Arnold Wesley Flowers III. The affidavit described that Defendant had been accessing storage lockers at Best Storage via a Best Storage employee who had arranged access. The affidavit described how Defendant and Defendant's son frequently accessed the storage building and storage lockers for short periods and often after regular business hours, with Defendant specifically accessing storage lockers #4126 and #4045. While the affidavit detailed that locker #4045 was leased to another individual, on March 9, 2016 Defendant, his son, and another individual accessed the building and likely accessed unit #4045, carrying a yellow jug to the locker and leaving shortly afterwards without it. On March 10, 2016 Defendant and his son entered Best Storage and locker #4045 with access keys. The affidavit described that Defendant's son appeared to be acting as a lookout while Defendant was in locker #4045. Defendant and his son met another vehicle for approximately thirty minutes, then returned to locker #4045, retrieved an item, and left.

The affidavit relayed that Best Storage had revoked an employee's twenty-four hour access to the units because she gave Defendant after-hours access to locker #4045 and Defendant had

frequently visited locker #4045 after hours. The affidavit described frequent, routine visits to locker #4045 by Defendant, his son, and another individual between March 11 and March 21, 2016. The trio moved and returned large portable safes into and out of locker #4045 "routinely" during this time.[12] The affidavit stated "[Defendant] appears to maintain dominion and control of the keys to the locker and the safes."[13] The affidavit described that on March 21, 2016, Defendant and his son carried a large portable safe into locker #4045 and retrieved another portable safe from within the locker and accessed both safes. Defendant removed a "large bundle of currency" roughly four inches thick, placed the money in a Crown Royal bag, examined the contents of another Crown Royal bag, returned both safes to locker #4045, and then departed Best Storage.

Between March 17-18, 2016, Smith, Defendant, his son, and Miranda Flowers moved from 5422 Larkspur to 3108 Seclusion Bay Drive also in Anchorage, Alaska. Law enforcement obtained a search warrant for 3108 Seclusion Bay Drive.

The affidavit reported that about 6:00am on March 29, 2016 Anchorage Police Department K-9 Officer Otts took K-9 Midas to "the fourth floor (of Best Storage) where it did not indicate on locker #4126, however K-9 Midas did indicate to the presence of illicit controlled substance at locker #4045."[14] The Alaska magistrate also considered the separate affidavit of Officer Otts submitted in support of the warrant, in which Officer Otts stated he and K-9 Midas were directed to the 4th Floor and told the locker in question was locker #4045.[15] Officer Otts' affidavit provided that he directed K-9 Midas to search the alcove area and K-9 Midas immediately went to locker

---

[12] Affidavit of Detective Blanton at 4.
[13] Affidavit of Detective Blanton at 4.
[14] Affidavit of Detective Blanton at 4.
[15] Officer Otts, the K-9 Handler, included additional details regarding K-9 Midas, including training and handler details. Locker #4045 was located in a small alcove with one other locker opposite.

5

#4045.  "MIDAS then searched the rest of the alcove and returned to that locker.  He indicated on the presence of the odor of narcotics coming from that locker, #4045."[16]

The affidavit described how on March 29, 2016 law enforcement executed a search warrant at 3108 Seclusion Bay Drive and found two handguns located in two safes in Defendant's bedroom along with Defendant's passport.  The affidavit also described that law enforcement found approximately $30,000 in cash, about 6 ounces of cocaine in the upstairs bathroom, two ounces of which were inside the toilet and consistent with an attempt to destroy evidence.  The affidavit reported that when law enforcement first contacted 3108 Seclusion Bay to execute the search warrant, Miranda Flowers told officers Defendant was in the same bathroom containing the drugs.

Detective Blanton submitted his affidavit seeking the warrant to the magistrate judge on the afternoon of March 29, 2016.  The Alaska magistrate judge granted the search warrant at approximately 3:45pm on March 29, 2016 for Locker #4126 and #4045 for evidence of the crime of Misconduct Involving a Controlled Substance in the Second Degree and Misconduct Involving Weapons.[17]  Detective Adair telephonically amended the affidavit at approximately 5:28pm and the judge issued an amended warrant at 5:40pm.  The warrant was amended to include evidence of Theft by Deception, Fraud, and False Report; additional items such as "stolen property" were added to the face of the warrant.[18]

In discovery, surveillance video was provided that showed Officer Otts and K-9 Midas at Best Storage on March 29, 2016 at 6:00am.[19]  The video shows that Officer Otts took Midas to the Fourth Floor alcove area.  Officer Otts led Midas directly to locker #4045, Midas sniffed at the

---

[16] Officer Otts affidavit, included with Exhibit A of Defense Motion to Suppress.
[17] Attached as Exhibit A to Defense Motion to Suppress.
[18] Attached as Exhibit A to Defense Motion to Suppress.
[19] This information was not presented to the Alaska magistrate judge, but provided as part of discovery to the Defendant.

suspected locker door of #4045 and adjacent wall, and Midas did not alert or react. Midas then moved to the other locker in the alcove and Midas did not alert or react. Midas returned to locker #4045 and sniffed again at the wall and locker, and Midas did not alert or react in any way. Midas left the area adjacent to locker #4045 on his own. Officer Ott brought Midas back to the alcove and Midas went to the opposite locker and did not alert or react. Midas smelled at locker #4045 once more and did not alert or react. Then Midas went to the opposite locker and back to locker #4045 and did not alert or react. In all, Midas smelled at locker #4045 four times and did not alert or react.

  The video reflects that Officer Otts then got Midas' attention by running his partially closed hand along the wall of locker #4045, up the wall, and up the side of the locker door of #4045, then along the bottom of the locker door of #4045 and up the other side. Midas followed Officer Otts' closed hand and when Officer Otts finished running his hand along the door of #4045, Midas laid down in front of the door to #4045. Midas and Officer Otts then left the alcove. A short time later, Officer Otts returned to the alcove with Midas and rubbed his hand around the wall and locker #4045 going in the opposite direction, Midas left the alcove without laying down or being directed to do so. Midas returned to the alcove on his own and smelled at the opposite locker. Midas returned to Officer Otts, positioned at #4045. Midas sniffed at the far corner of locker #4045 and laid down. Officer Otts directed Midas to the bottom of locker #4045 and up the side of the door, Midas circled around and laid down at corner of #4045. Officer Otts leaned over and appeared to direct Midas to focus back on that same corner of locker #4045. Officer Otts stood and Midas turned his attention to the officer; Officer Otts bent forward and Midas returned his attention to locker #4045.

**Conclusions of Law**

**I. Defendant has standing to challenge Alaska search warrant #3AN-11-888.**

In the Fourth Amendment context, "only those who have a legitimate expectation of privacy in an area [may] challenge a search of it."[20] That expectation must be not only legitimate, but also "must be an actual one and one that society is prepared to recognize as reasonable."[21] The challenger bears "the burden of establishing their legitimate expectations of privacy" as a condition precedent to review of the warrant's lawfulness.[22] "The Fourth Amendment shields not only actual owners, but also anyone with sufficient possessory rights over the property searched."[23] Possessory rights are not governed by property law principles for Fourth Amendment purposes,[24] rather a person simply "needs some joint control and supervision of the place searched, not merely permission to be there."[25] Joint control of a place can be evidenced by, for example, an ongoing formal agreement, payment of rent or bills, and use of the place for its agreed upon purpose.[26]

Defendant may challenge the warrant since he enjoyed sufficient control of locker #4045. He had control of the codes and keys to enter the building and the storage locker #4045 itself. He used the locker on a frequent basis to store items within days of the search warrant's execution. Detective Blanton's affidavit explained that Defendant maintained dominion and control of the key to the locker itself, as well as dominion and control over the safes he often transported into and out of the locker. While the locker was not leased in the Defendant's name, he very much acted in a manner that demonstrated, at minimum, his joint control and supervision of the locker.

---

[20] United States v. $40,955.00 in U.S. Currency, 554 F.3d 752, 756 (9th Cir. 2009).
[21] $40,955.00 in U.S. Currency, 554 F.3d 752, 756.
[22] $40,955.00 in U.S. Currency, 554 F.3d 752, 756.
[23] Lyall v. City of Los Angeles, 807 F.3d 1178, 1186 (9th Cir. 2015).
[24] Georgia v. Randolph, 547 U.S. 103, 103 (2006).
[25] Lyall, 807 F.3d 1178 (9th Cir. 2015).
[26] *See* United States v. Reyes-Bosque, 596 F.3d 1017, 1028 (9th Cir. 2010).

Accordingly, the defendant is entitled under the Fourth Amendment to challenge the search warrant.

**II. Miranda Flowers Lacked Possessory Rights and Enjoyed No Expectation of Privacy in Storage Locker 4045; she lacks standing to challenge Alaska search warrant #3AN-11-888.**

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."[27] Specific to facts in our case, "a defendant who merely possesses the authority to access a storage rental room but does not use it, without more, lacks Fourth Amendment standing to challenge the unlawful search of that area."[28] No evidence, even via proffer, was presented demonstrating a possessory relationship between Miranda Flowers and storage locker #4045. Miranda Flowers did not lease the locker in her name, she was not known to access the locker, and she did not pay rent for the locker. While her codefendant and husband, Defendant, had a possessory interest in the locker as explained above, "[n]o rights of the victim of an illegal search are at stake when the evidence is offered against some other party."[29]

Indeed, "[t]he established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."[30] Whereas for example, Defendant exercised "dominion and control" of the key to the locker, and was frequently seen accessing the locker, no such representations were made regarding Miranda Flowers interest in storage locker #4045. Even if Miranda Flowers ultimately had a possessory

---

[27] Plumhoff v. Rickard, 134 S. Ct. 2012, 2022, (2014) (quoting Alderman v. United States, 394 U.S. 165, (1969)) (internal quotation marks omitted).
[28] United States v. Sarkisian, 197 F.3d 966, 987 (9th Cir. 1999).
[29] Alderman v. U.S., 394 U.S. 165, 174, (1969). See also United States v. Padilla, 508 U.S. 77, 82, (1993). *See also, e.g.,* United States v. Lingenfelter, 997 F.2d 632, 636, (9th Cir. 1993).
[30] Alderman, 394 U.S. 165, 171-172, (1969).

9

interest in some of the items or evidence seized from within locker #4045, the court's analysis is focused on the possessory interest and expectation of privacy in the place the evidence was seized from. Miranda Flowers did not exhibit any of the behaviors consistent with control of that place. Therefore, she may not seek review of the warrant that authorized the search thereof.

### III.  Defendant's request for a Franks hearing.[31]

Defendant moved for a <u>Franks</u> hearing challenging the warrant's supporting affidavit of Officer Otts describing K-9 Midas' behaviors on March 29, 2016.[32] Defendant alleged the supporting affidavit mislead the issuing magistrate judge because it omitted a complete description of Midas' behaviors leading to an alert outside locker #4045 on March 29, 2016. After reviewing the additional surveillance, this court found the Defendant made a "substantial preliminary showing" sufficient to challenge Officer Ott's affidavit with regard to the conditions and significance of Midas' alert and found the alleged omissions material to the finding of probable cause for the search warrant.[33] However, this court found that even if the addition of the omitted material rendered Midas' behaviors insignificant to the issuing magistrate judge, Detective Blanton's affidavit still provided sufficient probable cause for the search warrant. Therefore, this court denied the Defendant's motion for a <u>Franks</u> hearing. The alleged omissions of K-9 Midas'

---

[31] When a defendant makes a preliminary showing that a search warrant affidavit includes a false statement, or one made with reckless disregard of the truth, then she is entitled to a hearing to determine the validity of the warrant. <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) "The party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." <u>United States v. Ruiz</u>, 758 F.3d 1144, 1148 (9th Cir. 2014) citing <u>Ewing v. Stockton</u>, 588 F.3d 1218, 1223 (9th Cir. 2009)

[32] Defendant's Motion to Suppress alleged four "conditions of the dog sniff at locker #4045 were grossly misleading…" at 12 of the Memorandum at Dkt. 55 (Dkt. 61). However, Defendant's motion did not account for the Government'a disclosure of the surveillance video, a disclosure that modified Defendant's bases for his allegations.

[33] Court order, at Dkt. 111 (Dkt. 129) regarding Defense request for a <u>Franks</u> hearing.

actions on March 29, 2016, simply did not mitigate the probable cause contained in the remainder of the affidavit.

Regardless of its prior ruling, this court must examine "whether probable cause remains once the affidavit is supplemented with the challenged omission."[34] Therefore, the omitted material regarding Midas' behavior on March 29, 2016, material now alleged by the Defendant to be misleading, will be considered by this court in its review of the issuing magistrate judge's probable cause determination.

**IV.  The issuing magistrate judge had a substantial basis to find probable cause to issue the search warrant; search warrant #3AN-11-888 is valid.**

When this court is called upon to review the actions of a magistrate judge's determination of probable cause, its role remains clear. This court has a narrow scope of inquiry, simply to ensure the magistrate judge had a substantial basis for concluding that probable cause existed.[35] The issuing magistrate judge's "determination [of probable cause] should be paid great deference" by this court when reviewing the determination for error.[36] In looking for that substantial basis, this court reviews the totality of the circumstances as they were presented to the magistrate judge prior to issuance of the warrant, which can include "opinions and conclusions" of an experienced affiant.[37]

---

[34] Bravo v. City of Santa Maria, 665 F.3d 1076, 1084 (9th Cir. 2011).
[35] United States v. Seybold, 726 F.2d 502, 503 (9th Cir. 1984) (citing United States v. Ventresca, 380 U.S. 102 (1965).).
[36] United States v. Kelley, 482 F.3d 1047, 1050 (9th Cir. 2007) ("Normally, we do not "flyspeck" the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference.") (citing Illinois v. Gates, 462 U.S. at 236, (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969))).
[37] United States v. Michaelian, 803 F.2d 1042, 1045 (9th Cir. 1986) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983).).

In its review, this court examines whether a reasonable nexus exists between the activities supporting probable cause and the locations to be searched.[38] This 'reasonable nexus' does not require direct evidence that the items listed as the objects of the search are on the premises to be searched, instead the magistrate must "only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit."[39]

The Alaska magistrate judge had a substantial basis considering the totality of the circumstances on which to find probable cause existed to grant the search warrant for evidence of controlled substances at locker #4045 at Best Storage. Law enforcement officers had twice purchased illegal drugs from an informant; Smith provided the drugs to the informant. Smith went back and forth to Best Storage on the day of the second purchase and met with Defendant's son. During this time, Defendant and his son frequently accessed the lockers at Best Storage for short periods acting suspiciously. Defendant's son acted as a lookout and they obtained clandestine after-hours access.

Smith lived with Defendant, Miranda Flowers, and Defendant's son at 5422 Larkspur. Law enforcement suspected that Defendant was involved in the sale of heroin from other investigations. Defendant and his son moved large safes in and out of locker #4045 from March 11-21, 2016. On March 21, 2016 Defendant moved a large safe into locker #4045 and removed a large bundle of currency placed in a bag, examined the contents of another bag and returned those to locker #4045. Hours before obtaining the warrant for locker #4045, law enforcement found several handguns in two safes in Defendant's bedroom, $30,000 in cash, and cocaine at his residence. The totality of

---

[38] United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993) (citation omitted).
[39] Pitts at 1369. *accord* United States v. Hernandez, 80 F.3d 1253, 1258 (9th Cir.1996).

this information evidences a nexus between illegal drug dealing and weapon possession, and storage locker #4045.

This nexus is established despite the lack of direct evidence of controlled substances or weapons being carried into locker #4045. However, direct evidence is not required. "Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location."[40] The affiant need only "enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated."[41] Considering evidence of actual drug transactions, firearms found in the residence of Smith and Defendant, and the nature of the access to and behavior surrounding the use of locker #4045, make it reasonable to seek evidence of the charged crimes in locker #4045, a place frequented by the Defendant in a clandestine fashion.

Defendant suggests there is a legitimate explanation for his activities and the contact with locker #4045. However, observations of conduct consistent with drug trafficking, even though apparently innocuous, can give rise to probable cause.[42] The Ninth Circuit has found that "it is not uncommon for seemingly innocent conduct to provide the basis for probable cause."[43] Here, the actions of Defendant and his son routinely visiting a storage unit for short periods could be

---

[40] United States v. Angulo–Lopez, 791 F.2d 1394, 1399 (9th Cir.1986).
[41] United States v. Taylor, 716 F.2d 701, 706 (9th Cir.1983) (citation omitted). Cited by United States v. Valencia, 24 F.3d 1106, 1109 (9th Cir. 1994). The magistrate may draw reasonable inferences about where the evidence is likely kept, based on the nature of the evidence and the offense involved. *Id.*
[42] United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995); examples cited by Gil include United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991) where actions inconsistent with a legitimate trucking business, together with pager calls and evasive driving, gave rise to probable cause; United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991) where counter-surveillance driving, tandem driving, a car switch, and beeper phone calls provided a substantial basis for the probable cause determination.
[43] United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir.1989)

13

benign when considered alone. However, the evidence of actual illegal drug transactions, guns and drugs found at the home of the Defendant and his son earlier that day, in the totality of the circumstances, provided the issuing magistrate with a substantial basis for the warrant for locker #4045.

The issuing magistrate judge also considered evidence of the behaviors of the drug detecting K-9 Midas outside locker #4045. Detective Blanton's affidavit described a confirmatory alert with little detail, providing simply that "MIDAS was taken to the fourth floor where it did not indicate on locker #4126, however Midas did indicate … at locker #4045."[44] Officer Otts' supplemental affidavit stated he directed Midas to search the alcove; Midas went immediately to locker #4045, searched the rest of the alcove, returned to locker #4045 and then indicated. These versions of Midas' behaviors are so succinct as to mislead the reader.

Midas did not go immediately on his own to locker #4045 and alert once taken to the fourth floor. Midas only went to locker #4045 because Officer Ott led Midas directly to locker #4045.[45] Midas did not alert immediately, but sniffed at locker #4045 with no reaction. Officer Ott brought Midas back to locker #4045 multiple times and Midas did not indicate or act remarkable in any way. Only when Officer Ott prompted Midas, in the first instance by making a closed hand and running it along the wall adjacent to locker #4045 and all around the door of locker #4045, and in the second instance when directing Midas to the same bottom corner of the door to locker #4045, did Midas then react.[46] Midas failed to alert or react multiple times prior to Officer Ott's prompt.

---

[44] Detective Blanton's affidavit at 4.
[45] As observed on the surveillance video provided in discovery.
[46] The video did not show Officer Ott run his closed hand around any other locker door at Best Storage on March 29, 2016.

In contrast to the narrative in the affidavits, at no time did Midas react to locker #4045 without direction from Officer Otts.

The lack of a response from Midas and Officer Otts' role in directing Midas' attention ought to have been placed before the issuing magistrate judge for consideration. [47] To simply say that Midas went immediately to locker #4045 and alert to the presence of illegal drugs mischaracterizes the actions of Midas and Officer Otts. Midas was brought to locker #4045 over and over without making any remarkable behaviors and only when his handler, Officer Otts, performed unique actions at the suspected locker did Midas alert or indicate.

This court in making its determination considered the affidavit, as well as omitted material regarding Midas from the surveillance video. While this court finds the additional information material to the finding of probable cause, the omitted information of Midas' actions on March 29, 2016, simply did not mitigate the probable cause contained in the rest of Detective Blanton's affidavit. It is clear the Alaska magistrate judge was presented with a substantial amount of information regarding the defendant's activities with which to make the probable cause assessment. The Alaska magistrate had a substantial basis considering the totality of the circumstances on which to find probable cause existed to grant the search warrant for evidence of controlled substances at locker #4045 at Best Storage, even including the omitted information regarding MIDAS.

---

[47] Whether these actions would have affected the magistrate judge's assessment of Midas' behaviors is unknown, however the issuing magistrate judge should have been provided this information to make a more fully informed decision. Information regarding the behaviors of a drug detector dog during its search of a particular area are relevant to its result and weight of that result because the dog's behaviors are offered as evidence itself.

**Conclusion**

The Defendant and Miranda Flowers asked the court to suppress all evidence seized pursuant to Alaska state court warrant #3AN-11-888 authorizing search of storage locker #4045. For the reasons stated above, particular to Defendant and Miranda Flowers, this motion to suppress evidence should be DENIED.

IT IS SO RECOMMENDED.

DATED this 30th day of September 2016 at Fairbanks, Alaska.

        s/ SCOTT A. ORAVEC
    SCOTT A. ORAVEC
    United States Magistrate Judge

A party seeking to object to this Finding and Recommendation shall file written objections with the Clerk of Court for the District Court Judge per the schedule set out by the District Court Judge. The parties shall otherwise comply with provisions of Local Magistrate Rule 6(a). The failure to object to a Magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.[48] The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a Magistrate judge's recommendation.[49] Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.[50]

---

[48] McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).
[49] United States v. Howell, 231 F.3d 615 (9th Cir. 2000).
[50] See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).